Sue Ellen Tatter
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
550 W. Seventh Avenue, Suite 1600
Anchorage, Alaska  99501
(907) 646-3400

Attorney for Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| UNITED STATES OF AMERICA, | NO. A05-0082 CR (JWS) |
|---|---|
| Plaintiff, | |
| vs. | **SENTENCING MEMORANDUM OF THE DEFENSE** |
| JAMES A. JACKSON, SR. | |
| Defendant. | |

**I.     INTRODUCTION**

The defendant, James Jackson, Sr., through counsel, presents this memorandum for the imposition of sentence set for February 10, 2006, at 8:30 a.m.

The defense expects to present testimony from Mr. Jackson's wife, Dorene Jackson. She will travel from Ketchikan to court at her own expense to describe her husband's difficult but successful recovery from alcohol abuse. This testimony will support the defense contention that the criminal history is not representative of the future behavior

because it is alcohol-related, and Mr. Jackson put alcohol abuse behind him about ten years ago.

The defense has no objections to the facts and computations in the Presentence Report. Mr. Jackson's offense level is 10 and his criminal history category is II, facing a guidelines range of 8-14 months. However, the defense believes that several factors in the case call for mitigation, either under the Sentencing Guidelines as departures, or as factors under U.S.S.G. § 3553(a).

## II.    FACTUAL BACKGROUND OF THE DEFENDANT

James Jackson, Sr. is a recovering alcoholic. His mother abused alcohol, and six of his seven siblings experienced problems with alcohol. Mr. Jackson, who is 50 years old, has been a longshoreman and a carpenter. He has numerous alcohol-related offenses in the past, but quit drinking about ten years ago when his wife gave him the ultimatum to seek treatment or end the marriage. He attended a demanding in-patient program, including aftercare, and has remained sober.

Mr. Jackson has four children with his wife of 31 years. He has two grown children living in Alaska with work and families of their own. He has a daughter, Athena, who is a senior at Ketchikan High School and who will attend Oregon State University next year. She has a good academic record and received a college scholarship. She also has been active in sports and band. The youngest child Serena is a freshman and also very involved in sports and studies. The reason these children are successful is the love and

attention of their parents. Mr. Jackson has given many hours to school activities and has been a committed sports referee before his current back problems.

Mr. Jackson has two major medical problems – the residual effects of a donated kidney and severe back problems from a job injury. In 1999, Mr. Jackson was in renal failure. Through surgery at Virginia Mason Medical Center, he received a kidney donated by his brother. As a result, he is monitored constantly for signs of rejection. His residual problems include hyperlipidemia and hypertension. He takes numerous medications several times a day and wears a medication patch. His medical reports, available to the court, indicate that monitoring of his blood and re-adjustment of his medications are necessary to his continued health.

For example, Thomas Wood, M.D. in Anchorage, a practitioner in Nephrology (kidney function) reported to other examining doctors (Drs. McNeill and Williams) in 2002, that Mr. Jackson should have blood drawn once a month to monitor "Cyclosporine." The blood needed to be drawn 12-13 hours after a dose of the current Cyclosporine. Once the blood work was analyzed, the doctor recommended adjusting the dose of Cyclosporine from 200 mg. every 12 hours to 200 mg. in the evening and 175 mg. during the day.

In 2004, Dr. Wood wrote to a Ketchikan doctor that the Cyclosporine level was not proper and that tests should be repeated. He also said that Mr. Jackson's hyperlipidemia and hypertension responded poorly to low-dose Pravadol, so that Pravadol should be increased. Then, wrote Dr. Wood, all laboratory tests should be repeated.

Thus, the adjustments are complicated and subtle, and the time frames are precise. The monitoring described above is just for the drug Cyclosporine. Mr. Jackson

also takes Cell-cept, Neoral, Prednisone, Felodipine, Lipitor, and Catapres. Some of these medications vary in amount by time of day. They occasionally have irregularly-timed dosages.

The back problems originated in a back injury on the job in May of 2005. He was diagnosed with a herniated disc and is currently disabled from work as a longshoreman. He is receiving cortisone injections but is still in pain and is a candidate for surgery soon.

### III.  FACTUAL BACKGROUND OF THE OFFENSE

Mr. Jackson has been a longshoreman for about 30 years. He has been a member of the International Longshore and Warehouse Union, Local 200. He also has been treasurer of the ILWU. In 2003, while trying to purchase a home, Mr. Jackson embezzled union funds and used union credit cards to obtain cash for himself. The total amount was $12,934.50.

The union reported the embezzlement to the Department of Labor. When the union approached Mr. Jackson, he made a full confession and wrote a letter apologizing for his conduct, before this prosecution began. He repaid the amount of embezzlement out of his wages before the prosecution. He continued working as a union member until his back injury in May of 2005.

## IV.  MITIGATION REQUEST

### A.  Departures Under the Guidelines

If the guidelines were mandatory, Mr. Jackson would face 8-14 months in prison, with the eligibility, in Zone C, for community confinement or home detention so long as half the minimum jail term is imposed.  This scenario would require a minimum of four months incarceration which, in the circumstances here, may be excessive and even dangerous.

Under the guidelines, there exist rationales for departure, such as (1) extraordinary rehabilitation.  In very few theft cases does the defendant come before the court with the restitution paid and a detailed apology to the victim made before the federal prosecution began.  Another downward departure basis present here is (2) overstated criminal history.  The numerous alcohol offenses, which place Mr. Jackson in criminal history category II,  clearly pre-date alcohol treatment and consistent recent sobriety. They overstate his likelihood of future similar offenses.  If Mr. Jackson were in criminal history category I instead of II, without any other departures or mitigation, he would face 6-12 months in prison and be eligible for probation with community confinement or home detention. A further departure rationale here (3) is extraordinary family responsibilities. Mr. Jackson's attention to his daughters' needs is extremely important as Athena plans to attend college and as Serena studies and prepares for college.

The most important reason for a downward departure here (4) is the extraordinary medical problems presented if Mr. Jackson were incarcerated.  Because of his donated kidney, he needs constant, consistent and high-level monitoring.  A chemical

in his blood suggesting incipient rejection of the organ could be fatal if not addressed immediately. The testing must be conducted at precise times. The doctors must make minute and irregular adjustments. This is not the type of work for minimally-trained medical assistants in jails. It may also be beyond the range of contracting physicians at local jails, if they lack access to sophisticated labs such as at Virginia Mason. Particularly at the lower end of the incarceration spectrum, inmates tend to be moved around and housed in short term facilities. This situation is either dangerous for Mr. Jackson or very expensive for the Bureau of Prisons.

In addition, Mr. Jackson is 50 years old and almost immobile with his back injury. He is likely to suffer greatly in a population of young, rough inmates. He is also likely to require back surgery soon.

### B. Factors Under 18 U.S.C. § 3553(a)

Even if the court finds that the guidelines would not authorize departures here, the factors enumerated in 18 U.S.C. § 3553(a) suggest that mitigation of sentence to avoid incarceration is appropriate. The court should consider the nature and circumstances of the offense. The theft is at the low end of the guideline range, extremely close to the next lower offense level. The contrition was prompt and the money repaid. The completely paid restitution appears extraordinary when compared with other federal theft offenses.

The statute also requires consideration of the "history and characteristics of the defendant." This factor mandates consideration of the roles of alcohol and sobriety in

Mr. Jackson's life. It also requires the court to fashion a sentence which will not place Mr. Jackson in medical danger.

Importantly, the statute requires the court to consider the "need" for the sentence here. The defense submits that the public does not need further protection than supervision on probation. The public certainly does not need large medical expenses for a short-term prisoner. The statutes requires the court to give a sentence "not greater than necessary."

## V.    CONCLUSION

The defense respectfully requests that the court impose a sentence of probation with conditions of home confinement.

DATED this 31st day of January 2006.

Respectfully submitted,

s/Sue Ellen Tatter
Assistant Federal Defender
550 West 7th Avenue, Suite 1600
Anchorage, AK 99501
Phone:      907-646-3400
Fax:           907-646-3480
E-Mail:      sue_ellen_tatter@fd.org

<u>Certification</u>:
I certify that on January 31, 2006,
a copy of the *Sentencing Memorandum*
*of the Defense* was served electronically on:

Karen Loeffler
Assistant United States Attorney
U.S. Attorney's Office
222 West Seventh Avenue #9, Room 253
Anchorage, AK  99513-7567

and a copy was hand delivered to:

Tim Astle
U.S. Probation & Pretrial Services
222 W. 7th Avenue, #48, Room 168
Anchorage, AK 99513-7562


<u>s/Sue Ellen Tatter</u>